IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS DAVIDS.DUREN@GMAIL.COM, DDUREN@E3FOUNDATIONINC.COM, MRAPP@E3FOUNDATIONINC.COM, AND (978) 228-5085 THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 1:23-mj- 190-TSM<br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Nunley, being duly sworn, hereby depose and state:

**Introduction and Agent Background**

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the U.S. Department of Veterans Affairs ("VA"),

Office of Inspector General ("OIG"), and have been since July of 2023. Prior to employment

with VA-OIG, I was employed as a Special Agent with the Treasury Inspector General for Tax

Administration ("TIGTA"), Department of Homeland Security ("DHS"), and Immigration and

Customs Enforcement, Homeland Security Investigations ("ICE-HSI"). In preparation for this

assignment, and as part of my continued education, I have successfully completed law

enforcement and financial crimes focused training, including formal courses and training

exercises. I have participated in many aspects of federal investigations including, but not limited

to: subject, victim, and witness interviews; analysis of telephone and financial records; and

assisting with the preparation and execution of arrest and/or search warrants. As a federal agent,

I am authorized to investigate violations of the laws of the United States. As a law enforcement

officer, I am authorized to execute warrants issued under the authority of the United States.

3.      This affidavit is intended to show merely that there is sufficient probable cause

for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that DAVID DUREN has committed violations of Title 18,

United States Code, Section 1343, Wire Fraud, 18 United States Code Section 1349, Attempted

Wire Fraud, and Title 18, United States Code, Section 666, Government Program Fraud (the

"Target Offenses"). There is also probable cause to search the information described in

Attachment A for evidence, fruits, and/or instrumentalities of these crimes further described in

Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and

(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense[s] being investigated."  18 U.S.C. § 2711(3)(a)(i).

## PROBABLE CAUSE

### Background

6.      Harbor Care is a Nashua, New Hampshire-based non-profit corporation.  In June 2022, Harbor Care Chief Strategy Officer & Chief of Staff Vanessa Talasazan submitted a grant proposal to the Department of Veterans Affairs' ("VA") newly-created Staff Sergeant Fox Suicide Prevention Grant Program ("SSG Fox Program"). Based on the submission, the VA awarded Harbor Care $750,000 for use in assisting veterans at severe risk of suicide.

7.      One of the requirements of administering the SSG Fox Program was to hire a Program Manager to build out the program, liaise with the community, and manage vendors and costs associated with the program.

8.      On or about November 2, 2022, DAVID DUREN was selected to be the Program Manager for the SSG Fox Program.

9.      One of the requirements of DUREN's position was that he review and sign various employment documents. DUREN reviewed and signed the Harbor Care Code of Conduct and Conflict of Interest policies on June 1, 2023, certifying that he had received and reviewed both documents.

**E3 Foundation Inc.**

10.      On July 18, 2023, Harbor Care entered into a Services Agreement with E3 Foundation Inc. ("E3 Foundation"), purportedly located at 9 Bartlett Street, Suite #242, Andover, MA 01810. The agreement stated that E3 Foundation would provide Harbor Care the following services:

- 30 hours weekly (120 hours monthly) of Substance Use Disorders (SUDS) counseling
- Weekly group therapy
- Monthly financial literacy classes
- Access to the E3 Foundation referral network
- A weekly meeting between the E3 Director and Harbor Care Program Manager
- Veteran-first marketing materials at E3's location and events
- Bi-weekly status reporting

11.     According to Henry Och, President and Chief Executive Officer (CEO) of Harbor Care, there were no other competing bids submitted for the SSG Fox Program and E3 Foundation was selected based on DUREN's recommendation.  Specifically, DUREN had claimed to have worked with E3 Foundation before. At no time during this process did DUREN disclose any sort of relationship with E3 Foundation. The Services Agreement between Harbor Care and E3 Foundation was signed by a Dr. Michael Rapp, who was purportedly E3 Foundation's Director of Veteran's Clinical Services.

12.     According to Ana Pancine, Chief Financial Officer (CFO) of Harbor Care, E3 Foundation was required to submit an Internal Revenue Service (IRS) Form W-9 (Request for Taxpayer Identification Number and Certification) as one of the conditions of securing the vendor contract. The IRS Form W-9 submitted by E3 Foundation listed its Employer Identification Number (EIN) as 82-5338644 and was signed on April 26, 2018.

13.     Based on the above, E3 Foundation began working as a vendor for Harbor Care, purportedly under the supervision of Program Manager DUREN.

**E3 Foundation Invoices**

14.     On or about July 5, 2023, DUREN submitted E3 Foundation invoice number 072023 in the amount of $16,499.40 from e-mail d.duren@harborcarenh.com to Harbor Care Accounts Payable Manager (AP Manager) Kathy Guzman. This invoice was for costs associated

with two retreat events for veterans planned by E3 Foundation, including merchandise, lodging, and meals for 24 veterans and six (6) staff members. In the e-mail dated July 5, 2023, DUREN requested to pick up the check from AP Manager Guzman as he had a meeting with E3 Foundation scheduled in two days and wanted to hand deliver the payment. This invoice was paid by Harbor Care[1] via a check dated July 7, 2023, which was deposited the same day into Digital Federal Credit Union (DCU) Account ending in 0266. Digital Federal Credit Union is an FDIC-insured credit union headquartered in Marlborough, Massachusetts.

15.     On or about July 25, 2023, DUREN submitted a second E3 Foundation invoice from e-mail d.duren@harborcarenh.com, also numbered 072023, to AP Manager Guzman in the amount of $24,198.80. The invoice was for 120 hours of clinical services as well as one (1) hour of clinical supervision. In the e-mail DUREN sent when submitting the invoice to AP Manager Guzman, he stated that he could pick up the check as he meets "with [E3 Foundation] on the 2nd of every month for a status update." Based on this information, Harbor Care issued a check for the invoice on July 25, 2023.  The check was deposited into DCU Account ending in 0266 on July 28, 2023, approximately one week before the alleged status update meeting on August 2.

16.     On or about July 31, 2023, DUREN submitted a third invoice on behalf of E3 Foundation from e-mail d.duren@harborcarenh.com, again numbered 072023, to AP Manager Guzman in the amount of $7,741 for "retreat merchandise." Based on this information, Harbor Care issued a check from its own funds for the invoice on August 10, 2023, which was deposited into DCU Account ending in 0266 on the same date.

17.     On or about August 20, 2023, DUREN submitted a fourth invoice from e-mail

---

[1] Under the conditions of the SSG Program grant, Harbor Care made payment to E3 Foundation using its own funds and later received reimbursement from the VA.

d.duren@harborcarenh.com to AP Manager Guzman on behalf of E3 Foundation in the amount of $24,498.80. The invoice was for 120 hours of clinical services as well as two (2) hours of clinical supervision. In the e-mail DUREN sent, he stated that he would be meeting "Dr. Rapp on 30th so I can hand deliver check again." According to CFO Pancine, this invoice was flagged by the Harbor Care Accounting Department as it stated in the invoice notes that the period of service was "1 July thru 31 July," even though clinical services would have been for the period of August 2023.

**Evidence of the Scheme**

**Harbor Care's Internal Investigation**

18.     Upon closer review of the expenditures associated with the SSG Fox Program, Harbor Care's internal accountant was concerned that DUREN submitted questionable invoices for July and August with insufficient detail.

19.     On August 23, 2023, CFO Pancine reviewed a Business Entity Summary printout from the Commonwealth of Massachusetts that listed DAVID DUREN as the President of E3 Foundation and his wife KHRISTINE DUREN as the Clerk of E3 Foundation. CFO Pancine stated that had Harbor Care known about DUREN's apparent control over E3 Foundation, Harbor Care would not have entered the contract with E3 Foundation. Additionally, according to the Business Entity Summary, the location of E3 Foundation's principal office in Massachusetts is listed as 162 East Broadway, Haverhill, MA 01830. Law enforcement conducted a drive-by of both 162 East Broadway address and the 9 Bartlett Street address in Andover, Massachusetts, listed for E3 Foundation in the vendor contract. 162 East Broadway is a private residence that matches the home address DUREN provided to Harbor Care's Human Resources department. 9 Bartlett Street is a strip mall that contains a liquor store and a United Parcel Service (UPS) store,

with no evidence of a business called E3 Foundation.

20.     Also on August 23, 2023, an internal review conducted by Harbor Care CFO

Pancine, Compliance Officer Sawicki, and others revealed the following information:

- The bank used by DUREN for his Harbor Care payroll direct deposits was the same bank (DCU) used by E3 Foundation;
- A review of the State of Massachusetts Business Entity search revealed that the EIN on the W-9 submitted by E3 Foundation was not found;
- A review of the Articles of Incorporation on file with the State of Massachusetts for E3 Foundation revealed that the principal address used for E3 Foundation was the same address as DUREN's personal address; moreover, CFO Pancine compared DUREN's signature on E3 Foundation's Articles of Incorporation  with the signature on the back of the checks issued to E3 Foundation and concluded that they appeared nearly identical;
- A review of the National Provider Identification (NPI) database showed that there was no evidence of a Dr. Michael Rapp with a license in a behavioral health field in New Hampshire or Massachusetts; moreover, the NPI database showed no practitioners named Dr. Michael Rapp who had a license in behavioral health.
- A review of e-mails using the domain "E3foundationinc" in DUREN's Harbor Care e-mail revealed the following suspicious e-mails:
  - An e-mail dated December 5, 2022 was forwarded on December 7, 2022 from d.duren@harborcarenh.com to dduren@e3foundationinc.com, indicating DUREN still had a relationship with E3 Foundation;
  - An e-mail titled "Test" was sent from d.duren@harborcarenh.com to mrapp@e3foundationinc.com and dated July 18, 2023, the same date Dr. Rapp allegedly signed the Services Agreement with Harbor Care.

21.     Also on August 23, 2023, CFO Pancine sent an e-mail to DUREN requesting

specific additional details regarding the services being billed by E3 Foundation. She also

requested an updated W-9, and detailed information about the retreat invoices and merchandise

purchased by E3 Foundation.

22.     In back-and-forth e-mails between CFO Pancine and DUREN, DUREN

responded stating only that the 120 hours of service were for clinical work, and that E3

Foundation was meeting his expectations. DUREN stated that as E3 Foundation is a clinical

program, he kept reporting of what was being discussed to a minimum. DUREN further stated

that the retreat was scheduled to take place in October at the Appalachian Mountain Club and that the invoice outlined the "swag" purchased for the retreat.

23.     The next day, August 24, 2023, DUREN provided a Microsoft Word document titled "E3 Foundation Update" to CFO Pancine allegedly capturing the notes from his July 28, 2023 meeting with Dr. Rapp.  However, CEO Och performed a Microsoft Word search on the document by clicking the "File" tab on the menu bar, clicking "Info," then clicking "Properties" to reveal that the document's actual creation date was August 24, 2023.

24.     On August 30, 2023, Harbor Care's Compliance Officer Sawicki and CFO Pancine met with DUREN. During the meeting, DUREN denied a conflict of interest and stated that he had previously sold E3 Foundation. DUREN also provided a phone number for Dr. Rapp of 978-228-5085. CFO Pancine called the phone number and the voicemail box stated to leave a message for "David." At the conclusion of the meeting, DUREN was terminated. SA Nunley conducted a search of the Thomson Reuters CLEAR law enforcement database which revealed that the phone number 978-228-5085 is associated with DUREN through "Bank Account Header Records."  The database also showed the phone number as connected to DUREN's home address of 162 E. Broadway, Haverhill, MA.

25.     Between September 2 and September 5, 2023, Compliance Officer Sawicki continued to review DUREN's Harbor Care e-mail account. During the review, she discovered two (2) additional e-mails, both dated July 5, 2023 from davids.duren@gmail.com to d.duren@harborcarenh.org. The first e-mail was sent at 8:29 a.m., was titled "Updated invoice," and contained a PDF attachment of a draft invoice numbered 072023. The PDF attachment was an invoice from E3 Foundation Inc. to Harbor Care in the amount of $15,819.66. The body of the e-mail contained a link to https://invoice-generator.com, a website that allows you to develop a

template for an invoice, including the ability to add your company logo. The second e-mail was

sent at 10:07 a.m., was titled "Final invoice," and contained a PDF attachment of invoice number

072023. The PDF attachment was an invoice from E3 Foundation Inc. to Harbor Care in the

amount of $16,499.40. The change to the invoice amount was reflected in the number of

"Programming t-shirts" and "Program Journal books" being ordered by E3 Foundation, and

matched the invoice submitted to Harbor Care via DUREN's work e-mail account,

d.duren@harborcarenh.org.

26.     During an interview with law enforcement on October 12, 2023, CEO Och, CFO

Pancine, and Compliance Officer Sawicki noted that based on their experience as service

providers, if Dr. Rapp was providing all the services being billed to the SSG Fox Program that

DUREN was overseeing, there should have been a much higher volume of e-mail

communication between DUREN and Dr. Rapp.

27.     On or about September 5, 2023, Compliance Officer Sawicki conducted an

internal audit by attempting to call each of the veterans listed on Harbor Care's SSG Fox

Program tracker. Sawicki was able to speak with twelve (12) veterans out of approximately 30

on the referred veterans list. All twelve stated they received no clinical services through the SSG

Fox Program grant. Additionally, Sawicki spoke with all the SSG Fox Program staff DUREN

supervised. The staff members stated that none of them had ever heard of E3 Foundation and

were not aware of any referrals made to E3 Foundation.

28.     As previously mentioned, DUREN provided a document to Harbor Care titled

"E3 Foundation Update" which purportedly summarized notes from the July 28, 2023 program

meeting between himself and Dr. Rapp. The document included a complete summary of the July

2023 treatment provided to veterans in the SSG Fox Program. However, a comparison of

9

DUREN's update to Harbor Care's own internal program tracking notes revealed that prior to

July 10, 2023, only five (5) veterans were contacted about services, with none being referred.

Additionally, the Harbor Care internal audit revealed that as of August 24, 2023, the Department

of Veterans Affairs only had three (3) veterans from Harbor Care enrolled in the SSG Fox

Program. This information directly contradicted DUREN's notes in the E3 Foundation Update,

which stated the following under "Session numbers" for the month of July:

- Individual treatment:
  i. From July 1 ((to include break from 4th of July) thru July 31st the
     following number are applicable.
     1. Week July 3 -9 (No services provided July 4th) 6 veterans
        participated in INDVT, 3 Family members participated in family
        counseling.
     2. Week July 10-16th 9 veterans participated in INDVT, 3 family
        members participated in counseling, 2 Veterans received after
        hours emergent referrals (1 to ER and 1 to Crisis line).
     3. Week July 17-23 12 Veterans participated in INDVT, 6 couples
        participated in sessions.
     4. Week July 24- 31th 15 Veterans participated in INDVT, 3 couple
        sessions, and 4 referrals to outside treatment programs (1- Home
        base 2-week PTSD intensive, 1 Mclean SUDS program, 1 SARPT
        (VA INPT), 1 Banyan treatment).

29.     Additionally, on September 6, 2023, CFO Pancine received an e-mail from Dr.

Rapp at mrapp@e3foundationinc.com stating that the materials ordered for the retreat "hasn't

been placed as of yet."  Yet, as mentioned above, Harbor Care had already made two payments

to E3 Foundation totaling approximately $24,240.40 for retreat-related expenses.

30.     Furthermore, on September 22, 2023, DUREN sent an e-mail from

davids.duren@gmail.com to counsel for Harbor Care stating that E3 Foundation did have contact

with Appalachian Mountain Club Lodge (AMC Lodge) to book a retreat for October 2023.

DUREN's e-mail contained the contact information for John Darak, AMC Group Sales Manager.

In response, Sawicki reached out to Darak,  On September 26, 2023, Sawicki received a response from Darak stating that his only contact with E3 Foundation about a retreat was one (1) conversation with a "Michael Rapp" on September 7, 2023 (more than 2 months after E3 Foundation billed Harbor Care for the retreat) to discuss an October retreat. Darak provided Sawicki with a copy of his e-mail response to Dr. Rapp at mrapp@e3foundationinc.com dated September 8, 2023, which confirmed that the first communication with Dr. Rapp to schedule the October retreat was on September 7, 2023. No deposits, contracts, or any other documentation was exchanged between AMC Lodge and E3 Foundation, despite the invoice Harbor Care previously paid to book the retreat. Moreover, a close comparison of the rates quoted in Darak's September 8, 2023 e-mail to Dr. Rapp showed the actual prices from AMC to be nearly double the amount in the invoice E3 Foundation billed Harbor Care on July 5, 2023.

### Target E-mail Accounts and Phone Number

31.     The "Target E-Mail Accounts" in this case are:

- davids.duren@gmail.com
- dduren@e3foundationinc.com
- mrapp@e3foundationinc.com (collectively, the "Target E-Mail Accounts")

32.     The "Target Phone Number" in this case is 978-228-5085 (the phone number used by "Dr. Rapp").

33.     Based on the above investigation conducted by Harbor Care, a review of open-source and law enforcement databases, as well as inquiries with various domain host companies, law enforcement determined that the content on the Target E-mail Accounts' is being housed by Google. On or about October 5, 2023, a preservation request was forwarded by law enforcement to Google requesting that Google maintain all records for the Target E-mail Accounts.

34.     Furthermore, an open-source database search revealed that the Target Phone Number provider was Bandwidth.com, Inc.

35.     On October 17, 2023, the Bandwidth.com Inc. Legal Department informed law enforcement that the Target Phone Number is on the Bandwidth network but assigned to the wholesale customer Google, Inc. Moreover, the e-mail stated that "for any and all subscriber information, records, and preservation requests, you will need to contact Bandwidth's wholesale customer directly."

36.     For the reasons set forth above, there is probable cause to believe that the Target E-Mail Accounts and the Target Phone Number contain evidence, fruits and/or instrumentalities of the Target Offenses.

37.     Based on the foregoing, this Application requests authorization to search Target E-Mail Accounts and the Target Phone Number from April 1, 2023 to October 1, 2023 for the categories of evidence listed in Attachment B.

## BACKGROUND CONCERNING GOOGLE[2]

38.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service

---

[2]     The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

39.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

40.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account. Enterprises, such as businesses and educational institutions, may also establish Google Accounts that can be accessed using an email address at the enterprise's domain (e.g. employee@company.com). Of crucial importance to this case, the creation date of the mrapp@e3foundationinc.com account during the time period requested will establish whether E3 Foundation employed a Dr. Michael Rapp, and whether this business was an actual ongoing concern that could have provided the services it billed Harbor Care for.

41.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below. Of importance here is the fact that Bandwidth.com informed law enforcement that the Target Phone Number subscriber information and content is being housed by Google.

13

42.     Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

43.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

44.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is

inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

45.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

46.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.  In addition to establishing the date the E3 Foundation e-mails and Enterprise Account were created, the evidence will help to establish whether Dr. Michael Rapp actually exists and whether E3 Foundation is an ongoing business concern. As the investigation above revealed, DUREN conducted activity on both the Gmail account believed to be in his custody and control, as well as on the E3 Foundation Enterprise account during the time period he was employed by Harbor Care and claimed to have no conflict of interest or business relationship with E3 Foundation.

47.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.  In my training and experience, criminal actors tend to use discreet methods of communication such as e-mails, and the content of the communication between DUREN and E3 Foundation are pivotal pieces of evidence to prove violations of the Target Offenses.

48.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

49.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a

plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

50.     Other information connected to the use of a Google account may lead to the discovery of additional evidence.  For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. Review of the requested content may yield additional evidence of the allegation of wire fraud through DUREN's use of a DCU banking application that would be revealed during the execution of this warrant. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

51.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers of the Target E-Mail Accounts and Target Phone Number and their use of Google services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

52.     Based on the information described above, I have probable cause to believe that records and data from Target E-Mail Accounts and Target Phone Number (as described in Attachment A), contain evidence and instrumentalities of the above-listed crimes (as described in Attachment B).

53.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google.  Because the warrant will be served on Google, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/ Michael G. Nunley
Michael G. Nunley
Special Agent
Veterans Affairs Office of the Inspector General

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on

October  30  , 2023:

Hon. Talesha L. Saint-Marc
United States Magistrate Judge

18

## ATTACHMENT A

### The Property to Be Searched

This warrant is directed to Google LLC (the "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043, and applies to information further described in Attachment B below within the Provider's possession, custody, or control associated with the following accounts:

- davids.duren@gmail.com

- dduren@e3foundationinc.com

- mrapp@e3foundationinc.com (collectively, the Target E-Mail Accounts)

- 978-228-5085 ("Target Phone Number")

**ATTACHMENT B**

**Particular Things to be Seized**

I.   **Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the period from April 1, 2023 to October 1, 2023:

a.   The contents of all emails associated with the Target E-Mail Accounts, including stored or preserved copies of emails sent to and from the Target E-Mail Accounts, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.   The contents of any voicemails associated with the Target Phone Number;

c.   All records or other information regarding the identification of the Target E-Mail Accounts and Target Phone Number, to include full subscriber information, full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the accounts were created, the length of service, the IP address used to register the accounts, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d.  All device or user identifiers which have ever been linked to the Target E-Mail Accounts and Target Phone Number, including but not limited to all cookies and similar technologies, unique application numbers, hardware models, operating system versions, device serial numbers, Global Unique Identifiers ("GUID"), mobile network information, telephone numbers, Media Access Control ("MAC") addresses, and International Mobile Equipment Identities ("IMEI");

e.  The types of service utilized;

f.  All records or other information stored by an individual using the Target E-Mail Accounts and Target Phone Number, including address books, contact and buddy lists, calendar data, pictures, and files; and

g.  All records pertaining to communications between the Provider and any person regarding the Target E-Mail Accounts and Target Phone Number, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within **14 days** days of issuance of this warrant.

## II.    Records and Data to be Searched and Seized by Law Enforcement Personnel

All information described above in Section I that constitutes following evidence, fruits, and/or instrumentalities of violations of Title 18, United States Code, Section 1343, Wire Fraud, 18 United States Code Section 1349, Attempted Wire Fraud, and Title 18, United States Code, Section 666, Government Program Fraud (the "Target Offenses"), those violations involving

DAVID DUREN, and occurring after April 1, 2023, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Records, communications, and information relating to a scheme to defraud Harbor Care or steal funds financed by the Department of Veterans Affairs;

b. Records, communications, and information relating to E3 Foundation or its principals or employees;

c. Information that constitutes evidence of the identification or location of the user(s) of the Target E-Mail Accounts and Target Phone Number;

d. Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Target E-Mail Accounts and Target Phone Number about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

e. Information that constitutes evidence indicating the Target E-Mail Accounts and Target Phone Number user's state of mind, e.g., intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

f. Information that constitutes evidence concerning how and when the Target E-Mail Accounts and Target Phone Number were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Target E-Mail Accounts and Target Phone Number user.